UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTINE RENEE VALLALA,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

CASE NO. 13-cv-06064 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction under 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos. 11, 20, 21).

After considering and reviewing the record, the Court finds that the administrative law judge ("ALJ") properly discounted the opinions of plaintiff's treating physician, the

credibility of plaintiff's subjective testimony, and statements provided by lay witnesses. Plaintiff has not identified an error in the ALJ's findings at steps four or five, and the Court therefore AFFIRMS the Commissioner's decision.

## BACKGROUND

Plaintiff CHRISTINE RENEE VALLALA was born in 1968 and was 41 years old on the alleged disability onset date of September 1, 2009 (*see* Tr. 122-24). Plaintiff has a college degree in elementary education (Tr. 33-34), and taught fifth grade for more than ten years (Tr. 49). Plaintiff last worked as an elementary school substitute teacher, but was unable to continue due to pain (Tr. 36, 48-49).

The ALJ found that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine and fibromyalgia (Tr. 13).

At the time of the hearing, plaintiff was living with her husband and three children (Tr. 35).

## PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") under 42 U.S.C. § 423 of the Social Security Act was denied initially and following reconsideration (*see* Tr. 57-62, 63-70). Plaintiff's requested hearing was held before ALJ Scott R. Morris on June 19, 2012 (*see* Tr. 27-54). On July 18, 2012, the ALJ issued a written decision finding plaintiff not disabled under the Social Security Act (*see* Tr.8-26).

In plaintiff's Opening Brief, she raises the following issues: (1) Whether or not the ALJ improperly rejected the medical opinions of a treating physician; (2) Whether or not the ALJ improperly rejected the credibility of plaintiff's subjective testimony; (3)

Whether or not the ALJ improperly rejected the lay witness evidence; and (4) Whether or not the ALJ failed to properly follow Social Security Ruling ("SSR") 96-8p at steps four and five (*see* ECF No. 11, p. 2).

STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1) Whether or not the ALJ improperly rejected the medical opinions of a treating physician.**

Plaintiff argues that the ALJ erred in discounting the opinions of her treating physician, James Merrill, M.D., regarding her fibromyalgia-related limitations. Dr. Merrill provided a number of opinions (Tr. 271-74, 327-32) regarding the effects of plaintiff's impairments on her ability to perform work activities, and the ALJ gave some weight to one of the opinions and little weight to others (Tr. 18). Plaintiff contends that the ALJ erred in relying instead on a state agency medical opinion, and in failing to find her fibromyalgia disabling under SSR 12-2p.

**A. Legal standards**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d

418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (*citing Andrews*, 53 F.3d at 1043; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (*citing Magallanes*, 881 F.2d at 751).

**B. Dr. Merrill's opinions**

All of Dr. Merrill's opinions specifically addressing plaintiff's functioning capacity post-date her date last insured ("DLI"), June 30, 2011. In July 2011, Dr. Merrill opined that she was unable to walk or sit for more than half an hour without resting, and that she could not return to her teaching job (Tr. 272-74). In September 2011, Dr. Merrill wrote that plaintiff could not return to any job, including her former teaching job, and that medications have not improved her condition (Tr. 271). In April 2012, Dr. Merrill indicated that due to fibromyalgia and chronic fatigue, plaintiff could sit for 30 minutes at a time (two hours total over an eight-hour workday), stand for 30 minutes at a time (two hours total over an eight-hour workday), and walk for 15 minutes at a time (two hours total over an eight-hour workday) (Tr. 327-32).

The ALJ assigned "some weight" to Dr. Merrill's July 2011 opinion, to the extent that the limitations he indicated were supported by his treatment notes (Tr. 18). He also noted, however, that this opinion was rendered post-DLI, and that plaintiff had asked Dr.

Merrill to help her document her disability (Tr. 278), inferring that Dr. Merrill's opinion was a form of advocacy (Tr. 18). Plaintiff argues that the ALJ's reasoning is erroneous because it overlooks treatment notes that support Dr. Merrill's opinion (ECF No. 11, p. 12-13). Dr. Merrill's treatment notes dating to the relevant period are scant, however, and do not provide clinical support for his opinions regarding severe limitations. For example, in May 2011, Dr. Merrill found that plaintiff had "fairly full motion of her spine," despite trigger-point tenderness, with only "slight SI joint tenderness[,]" "slightly tender" chest wall, negative straight leg raises, and "normal" hip movements (Tr. 279). In July 2011, Dr. Merrill documented plaintiff's complaints of pain, and tenderness in her low back and tailbone, but did not record any clinical assessment of her functional abilities (Tr. 278). Although Dr. Merrill provided many opinions about plaintiff's functional limitations, his treatment notes do not explain if or how he assessed those limitations, and this lack of clinical corroboration is a specific and legitimate reason to discount Dr. Merrill's opinions. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Similar problems plague Dr. Merrill's later opinions as well. Dr. Merrill's September 2011 letter states that plaintiff's fibromyalgia rendered her unable to work in 2009 and that she has been "unable to return to any job including her previous job" (Tr. 271). Dr. Merrill also indicated that medication has been unhelpful in alleviating plaintiff's symptoms (*id*.). The ALJ accurately stated that this letter does not mention any specific functional limitations, and found that to the extent that Dr. Merrill's letter

could be read to opine that plaintiff is unable to work, this issue is reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *5 (Jul. 2, 1996). Likewise, Dr. Merrill's April 2012 opinion refers to many checkbox limitations, but does not cite any specific findings that support his opinion: he merely states in summary fashion that plaintiff's tender trigger points, muscle weakness, and decreased spinal range of motion "combine for disability" (Tr. 330). Thus, the Court finds that the ALJ did not err in discounting Dr. Merrill's opinions as conclusory and unsupported by clinical evidence.

Plaintiff directs the Court's attention to the ALJ's discussion of her fibromyalgia diagnosis (Tr. 15-16), and argues that the discussion fails to conform to the standards set out by SSR 12-2p, but this discussion is unrelated to the ALJ's assessment of Dr. Merrill's opinions. ECF No. 11, p. 14-16. Plaintiff also suggests that the ALJ erred in relying on a State agency opinion to discredit Dr. Merrill's opinions, but the ALJ did not cite a State agency opinion as a reason to discount Dr. Merrill's opinions (Tr. 18). Because the reasons the ALJ did provide to explain why he discounted Dr. Merrill's opinions were specific and legitimate, the ALJ's assessment is affirmed.

**(2) Whether or not the ALJ improperly rejected the credibility of plaintiff's subjective testimony.**

The ALJ cited lack of corroborative medical evidence, inconsistent daily activities, plaintiff's work history, secondary gain motivation, and evidence of pain relief with conservative treatment as reasons to discount the credibility of plaintiff's subjective testimony (Tr. 15-18). Plaintiff challenges the ALJ's reliance on daily activities, work

history, secondary gain motivation, and medication response (ECF No. 11, p. 16-18), arguing that these reasons are not clear and convincing.

**A. Legal standards**

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair*, 885 F.2d at 603 (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair*, 885 F.2d at 603.

The ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642. Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan*, 169 F.3d at 599); *Reddick*, 157 F.3d at 722; *Smolen*, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's

daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284 (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit then a claimant's testimony as to the severity of symptoms based solely on a lack of objective medical evidence to corroborate fully the alleged severity of pain. *Bunnell*, 947 F.2d at 343, 346-47 (*citing Cotton*, 799 F.2d at 1407).

**B. Daily activities**

Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As to the second ground, the ALJ "must make 'specific findings relating to the

daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn*, *supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

The ALJ cited plaintiff's ability to manage her own personal care, help her children get ready for school, prepare her children's lunches, complete light household chores, cook simple meals, shop for groceries, and attend her children's sports activities once or twice a week as inconsistent with her allegations (Tr. 17). Plaintiff argues that the ALJ ignored the context in which she completed these activities: she required rest throughout the day and relied on help from others as to certain chores (ECF No. 11, p. 17).

Plaintiff's function report attested to her ability to complete the activities listed by the ALJ (Tr. 167-70), and she described herself on multiple occasions as able to complete duties related to being a wife, mother, and housekeeper, but unable to work outside the home (Tr. 134, 158, 180). Whether plaintiff can complete her obligations at home in addition to performing job functions is irrelevant to the ALJ's disability inquiry, but the ALJ nonetheless failed to comply with the *Orn* standard in relying on daily activities to discredit plaintiff. The ALJ did not identify specific inconsistencies in plaintiff's testimony, and did not explain how her activities demonstrated transferable work skills or make any transferability findings. Accordingly, the ALJ erred in finding that plaintiff's daily activities undermine her credibility.

//

//

**C. Work history**

The ALJ noted that plaintiff initially stopped working in 2001 in order to stay home with her children, and that after she later returned to work, she worked for years despite fibromyalgia that she now contends is disabling (Tr. 17). The ALJ construed this evidence against plaintiff's credibility because she initially stopped working for reasons other than her impairments, and she had been later able to work with her symptoms, but plaintiff argues that she eventually stopped working because her fibromyalgia symptoms had worsened; according to plaintiff, that she worked with less severe symptoms does not impugn her credibility.

The Court agrees with plaintiff that the fact that she stopped working in 2001 to stay home with her children is not relevant to the credibility of her disability allegations, because she returned to work after that point and claims to have subsequently become unable to work when her fibromyalgia symptoms worsened. Plaintiff consistently reported that her symptoms became worse over time, to the point where she could no longer work as a substitute teacher (Tr. 133-34).[1] Thus, the reasons provided by the ALJ related to plaintiff's work history do not support the adverse credibility determination.

**D. Secondary gain motivation**

The ALJ noted that plaintiff sought treatment with Dr. Merrill in order to obtain documentation for her disability application (Tr. 17 (*citing* Tr. 278)), rather than due to a

---

[1] Plaintiff was, however, apparently able to complete other work during the relevant period, as recently as November 2010, as a self-employed carpet cleaner (Tr. 240), although this evidence was not mentioned by the ALJ.

motivation for treatment only, and the Court finds that the ALJ's conclusion is supported by substantial evidence in the record. Plaintiff visited Dr. Merrill in July 2011, reporting ongoing pain in multiple areas (Tr. 278). Dr. Merrill's notes reflect why plaintiff returned to visit him:

> Because of all this and treatment since 2002 with me and chiropractic before this, she now feels that she is not able to work. She wants me to help her get disability by documenting this for her and her private attorney, as she apparently did not have enough visits with me when she was seeing alternative care providers.

Tr. 278.

The ALJ's other inference, however, drawn from plaintiff's statement that she experienced financial difficulties after she stopped working is not a sufficient reason to discount her credibility, because, as plaintiff contends (ECF No. 11, p. 18), any person who is not working would experience financial difficulties.

**E. Conservative treatment**

The ALJ noted that plaintiff does not take pain medication, despite complaints of disabling pain (Tr. 17). The ALJ acknowledged that plaintiff claimed to experience side effects from medication, and also alleged that the medication was not particularly helpful, but had also indicated that conservative treatments such as ice and rest provided the most effective pain relief (*id*.). Plaintiff contends that this reasoning is erroneous because she was willing to try medication, but it was not effective and/or caused side effects.

Plaintiff did try some medication, but did not try all recommended medications due to a personal preference against "strong medication." *See, e.g.*, Tr. 279. She also reported that conservative treatments such as exercise, vitamins, ice, and chiropractic

have been "most beneficial" in addressing her fibromyalgia pain (Tr. 235), and the ALJ's inference that her reports of disabling pain was inconsistent with her conservative treatment is supported by substantial evidence in the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008).

In sum, although the ALJ's credibility reasoning does contain some errors, as noted *supra*, the errors do not invalidate the overall adverse credibility finding. Because the ALJ's determination remains valid and is supported by substantial evidence, the errors in the ALJ's credibility rationale are harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**(3) Whether or not the ALJ improperly rejected the lay witness evidence.**

A number of plaintiff's friends and family members wrote letters on plaintiff's behalf, and the ALJ discounted the statements to the extent they were inconsistent with the ALJ's RFC assessment, because the lay witnesses were not experts, the statements were conclusory, and the witnesses did not indicate whether their statements applied to the relevant period or to the time they were written (Tr. 18-19). An ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Plaintiff does not dispute that all of the lay witness statements post-date her DLI, or that none of the lay witnesses specifically addressed whether their statements applied to the relevant period or whether they addressed plaintiff's functioning at the time the letters were written. *See* ECF No. 11, p. 19-21. The statements appear to be particularly focused on plaintiff's contemporaneous functioning. *See* Tr. 185-86 (addressing

plaintiff's current symptoms), Tr. 187 (April 2012 statement mentioning that plaintiff's symptoms have worsened in the past year, and opining that she cannot work "in her current condition"), Tr. 188 (describing plaintiff's functionality in the present tense), Tr. 189-90 (May 2012 statement describing recent situations), Tr. 193 (addressing what the lay witness sees "at this point" in May 2012). This is a valid reason to discount a lay statement, and it applies to all of the lay statements of record. *See, e.g.*, *Elliott v. Astrue*, Case No. 09-969, 2010 WL 3732297, at *4 (D. Or. Sept. 20, 2010) ("Because plaintiff must prove his disability prior to the expiration of his insured status, the ALJ's decision to focus on the relevant time period is a germane reason for dismissing the lay witness testimony." (citing *Armstrong v. Comm'r of Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998))).

**(4) Whether or not the ALJ erred at steps four and five.**

Most of plaintiff's last assignment of error restates arguments raised in other assignments of error, which were rejected for reasons provided *supra*. ECF No. 11, p. 21-22 (contending, *inter alia*, that the ALJ erred in rejecting Dr. Merrill's opinions, in rejecting her own subjective testimony, and in rejecting lay witness statements). The Court need not address these arguments further.

Plaintiff also contends, however, that the ALJ erred in finding that she could perform her past work as a teacher, even though that work is "light" and the ALJ's RFC assessment limited her to sedentary work. ECF No. 11, p. 21. She further argues that the vocational expert ("VE") "made no allowance" for the sit/stand option that the ALJ included in the RFC assessment. *Id.*, p. 22. Finally, plaintiff argues that the ALJ's

findings at step four and five are flawed due to the lack of a function-by-function comparison. *Id*. The Court will address each of these arguments in turn.

**A. Legal standards**

At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and assess his work-related abilities on a function-by-function basis, including a narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p, 1996 WL 374184, at *1. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p, 1996 WL 374184, at *5.

Plaintiff bears the burden at step four of demonstrating that she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). A claimant may be found not disabled at step four based on a determination that she can perform past relevant work as it was actually performed or as it is generally performed in the national economy. SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). An ALJ need not render "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). Instead, he need only make a sufficient finding pursuant to the applicable regulations. *Id*.

A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*,

49 F.3d 562, 520-71 (9th Cir. 1995)). A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

**B. Past work as a substitute teacher**

The ALJ found, relying on VE testimony, that plaintiff actually performed her past work at a sedentary level (Tr. 19, 48, 50). Thus, this finding is not inconsistent with the ALJ's RFC assessment, limiting plaintiff to sedentary work. That a teaching job is *generally* performed at the light level is irrelevant, because the ALJ's finding that plaintiff can perform the job as *actually* performed sufficiently supports the ALJ's step-four finding. *See* SSR 82-61, 1982 WL 31387, at *2.

**C. Sit/stand option**

Plaintiff argues that the VE's testimony did not account for a sit/stand option, but this argument overlooks the fact that the ALJ's hypothetical included a sit/stand option and the VE rendered testimony in response to that hypothetical (Tr. 50-51). It is unclear on what basis plaintiff asserts that the VE's testimony is negated by the inclusion of a sit/stand option in the RFC assessment (ECF No. 21, p. 10), because the VE explicitly considered the sit/stand option. Accordingly, plaintiff has failed to identify error as to the sit/stand option.

**D. Function-by-function comparison**

Plaintiff has failed to establish error in the ALJ's functional analysis, because the ALJ cited plaintiff's own description of the functional demands of her past work and the

VE's testimony regarding the same (Tr. 19 (*citing* Tr. 48-50, 139). Plaintiff has not advanced any argument as to why the ALJ erred in relying on those statements.

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for the Commissioner and the case should be closed.

Dated this 22nd day of August, 2014.

J. Richard Creatura
United States Magistrate Judge